L. A. ANDREW, Superintendent of Banking, v. STATE BANK OF ELLSWORTH.

FARMERS STATE BANK of Ellsworth, Claimant, Appellant, v. L. A. ANDREW, Receiver, Defendant, Appellee.

No. 41790.

September 26, 1933.

Martin & Alexander, for appellant.

F. J. Lund, for appellee.

Donegan, J.—The State Bank of Ellsworth, Iowa, closed its doors on October 12, 1930, and thereafter L. A. Andrew, superintendent of banking of the state of Iowa, was duly appointed and qualified as receiver. On October 8th, 9th, and 10th said State Bank of Ellsworth had issued drafts against Iowa-Des Moines National Bank of Des Moines, Iowa, in the sums of $442.62, $206.07, and $136.32, respectively, all in favor of Farmers State Bank of Ellsworth, Iowa, to cover clearances between the two Ellsworth banks. None of these drafts had been paid at the time of the closing of the State Bank of Ellsworth.

Within the time allowed for filing claims, the Farmers State Bank of Ellsworth filed its proof of claim, based on the three drafts thus issued to it, as a preferred claim with the receiver. As ground for such preference, it stated that the drafts had been given to it in payment of clearances between the drawer, State Bank of Ellsworth, and the payee, Farmers State Bank of Ellsworth; that such drafts were drawn against actual existing values, in that the State Bank of Ellsworth had, at the time of the issuance of said drafts, an arrangement or understanding with the Iowa-Des Moines National Bank that any drafts issued by said State Bank of Ellsworth in the usual course of business and upon its account with the Iowa-Des Moines National Bank would be honored when presented, and charged against certain credits or values on deposit with said Iowa-Des Moines National Bank in the form of collateral notes previously pledged by the State Bank of Ellsworth with said Iowa-Des Moines National Bank, in connection with its bills payable and rediscounts; said collateral pledge being largely in excess of the value necessary to secure said bills payable and rediscounts.

Such claim for preference was rejected by L. A. Andrew, as receiver, who allowed and classified said claim based upon said drafts as a deposit claim. To this classification of the claim made by the receiver, said Farmers State Bank of Ellsworth thereafter filed its objections and exceptions on the ground that the classification of the receiver failed to allow the claimant a preference to which it was entitled, and that the classification made by the receiver improperly and erroneously allowed such claim as a depositor's claim contrary to the express statutory provision of the state of Iowa.

Trial was had to the court upon the classification made by the receiver and the objections and exceptions thereto, and on the 21st day of March, 1932, the court entered its ruling in which it denied the claimant's application for preference. From such ruling the claimant, Farmers State Bank of Ellsworth, appeals.

The appellant alleges only one ground of error, viz:

"The court erred in overruling and denying appellant's claim for preference, thereby erroneously holding that the clearance drafts upon which the claim was based were not drawn against an actual existing value."

Appellant bases its claim upon the provisions of section 11, chapter 30, Acts' of the 43d General Assembly, which says:

"Any draft * * * issued and drawn against actual existing values by any bank * * * prior to its failure or closing and given in payment of clearings * * * shall be a preferred claim against the assets of the bank * * *."

The only proposition for our consideration is, therefore, whether or not the trial court erred in holding that the drafts upon which the claim was based were not drawn against actual existing values.

Appellee contends that the statement of the error relied upon by appellant for reversal fails to comply with Rule 30 of this court, in that it fails to apprise the court of the ruling complained of and the particular or particulars in which and for what reason it is claimed to be erroneous. We cannot say that the contention of the appellee is altogether unfounded, but we deem it unnecessary to decide this case upon the sufficiency of the allegation of the error relied upon, and prefer to base our decision on the merits.

It appears without dispute in the evidence that, at the time the

drafts upon which preference is sought were drawn, the account of the State Bank of Ellsworth with the Iowa-Des Moines National Bank was overdrawn in the sum of $1,426.76, that at that time the Iowa-Des Moines National Bank held three notes of the State Bank of Ellsworth aggregating $19,600, rediscounts of the State Bank of Ellsworth in the sum of $18,424.66, and that, in connection with the loans and discounts which aggregated approximately $38,000, the Iowa-Des Moines National Bank held collateral amounting to about $60,000.

The appellant contends that the collateral thus held by the Iowa-Des Moines National Bank was thus greatly in excess of the amount of indebtedness owing to it upon the notes and rediscounts, and that there was thus an existing value in the Iowa-Des Moines National Bank against which the drafts were drawn. This collateral, however, had been given to the Iowa-Des Moines National Bank, and was held by it to cover the loans and rediscounts, and, the account of the State Bank of Ellsworth being already overdrawn, the Iowa-Des Moines National Bank was under no obligation, in the absence of any agreement to the contrary, to pay the drafts drawn upon it by the State Bank of Ellsworth out of any excess value of the collateral over the amount of the loans and rediscounts. The collateral given in connection with the loans and rediscounts was given for an entirely different purpose, and had no connection with the overdraft in the account or with the payment of drafts drawn against the account of the State Bank of Ellsworth in the Iowa-Des Moines National Bank. See Ellis v. Citizens Bank of Carlisle, 211 Iowa 1082, 234 N. W. 849.

Appellant, however, contends that there was an agreement by which the excess value of the collateral should be treated as an existing value against which the drafts were drawn. Such agreement is alleged to have been made between Mr. Knudson, vice president of the State Bank of Ellsworth, and Mr. Capps, vice president of the Iowa-Des Moines National Bank. The only evidence of such agreement is contained in the testimony of Mr. Knudson and a Mr. Fardal, who was present with Mr. Knudson when he talked to Mr. Capps at the Iowa-Des Moines National Bank. Without reciting this evidence at length, it is sufficient to say that the testimony of Mr. Knudson shows that he was endeavoring to get Mr. Capps to agree to concede some of the collateral to a certain amount to be credited to the open account of the State Bank of Ellsworth; that he talked about the

collateral with Mr. Capps, went over the notes included in it, and contended with Mr. Capps that there was sufficient collateral to warrant him (Mr. Capps) in conceding a certain amount of credit upon the open account. Knudson expressly states that Mr. Capps never consented to do this, although he further says that, as he recalls the matter, Mr. Capps told him that they had been taking care of the State Bank of Ellsworth, and, rather than subscribe or agree to any definite amount, he (Capps) would take care of the State Bank of Ellsworth as he had. On cross-examination Knudson testified that Capps did not say that he would allow the State Bank of Ellsworth to overdraw up to a certain amount and did not make any definite statement that he would rediscount any notes or bills payable. Mr. Fardal testified that he heard Knudson say to Capps, in substance, that the State Bank of 'Ellsworth had been drawing drafts against an overdrawn account, and that he did not want to continue to do that unless he knew 'the drafts would be honored, and that Capps' answer was, "We haven't refused any so far have we?" We think a fair consideration of all the testimony not only fails to show that there was any agreement by which the Iowa-Des Moines National Bank was to honor the overdrafts of the State Bank of Ellsworth, but that the evidence is so vague and indefinite that it would be impossible to base any agreement thereon. If the evidence may be said to show anything clearly and conclusively, it is that Mr. Capps refused to make any definite arrangement. Moreover, there was nothing in the conduct of the Des Moines Bank to indicate the existence of the agreement claimed by appellant. On the contrary, Mr. Knudson's testimony shows that, on the very morning that the State Bank of Ellsworth closed, some of the drafts involved in this case had been returned without being honored by the Des Moines Bank.

The record shows that the receiver assented to the classification of the claim by the trial court as an ordinary deposit. No question is raised by the appellee in this court that it should have been classified as a general creditors' claim instead of a depositor's claim, and we are not called upon to determine the correctness of the classification thus made in that regard. If the evidence were sufficient to establish that the drafts in question were drawn against an existing value, there appears to be no reason why the claim should not be allowed as preferred against all the assets of the bank, in accordance with the rule announced in Andrew v. Farmers & Merchants State Bank of Cascade, 215 Iowa 1150, 247 N. W. 797. In

our opinion, however, the evidence fails to show any agreement by which any of the collateral was to be conceded or transferred to the open account or was to be treated as existing value against which drafts might be drawn by the State Bank of Ellsworth. The open account being overdrawn, there was no existing value against which the drafts could be drawn, and the ruling of the trial court in denying the preference claimed is hereby affirmed.

ALBERT, C. J., and EVANS, KINDIG, and CLAUSSEN, JJ., concur.